**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>RICHARD RANDALL GREEN,<br><br>                Applicant,<br><br>For an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery From DEUTSCHE BANK TRUST COMPANY AMERICAS and CITIBANK, NATIONAL ASSOCIATION For Use In Foreign Proceedings | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION FOR**
<u>**JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. §1782**</u>

## TABLE OF CONTENTS
### (continued)

Page

| | | | |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | JURISDICTION AND VENUE | | 3 |
| III. | FACTUAL BACKGROUND | | 3 |
| IV. | ARGUMENT | | 6 |
| | A. | Applicant Satisfies Section 1782's Three Statutory Prerequisites | 6 |
| | B. | The Supreme Court's Intel Factors Strongly Favor Granting Applicant's Section 1782 Application | 9 |
| | | 1. Neither Citibank Nor Deutsche Bank Americas Are Parties to the Underlying Australian Litigation | 9 |
| | | 2. Applicant Seeks Highly Relevant Documents That Will Assist and Be Well Received by the Australian Federal Court | 10 |
| | | 3. This Application Does Not Conceal An Attempt to Circumvent Foreign Proof-Gathering Restrictions | 11 |
| | | 4. The Discovery Sought Is Narrowly Tailored to the Needs of the Australian Litigation, and Is Neither Burdensome Nor Intrusive | 12 |
| V. | CONCLUSION | | 13 |

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re 28 U.S.C. § 1782*,
  249 F.R.D. 96 (S.D.N.Y. 2008) ...................................................................................................12

*In re Application of Barnet*,
  No. 13 MISC. 214 RMB, 2014 WL 7409524 (S.D.N.Y. Dec. 30, 2014) ..................................11

*In re Application of Malev Hungarian Airlines*,
  964 F.2d 97 (2d. Cir. 1992) ........................................................................................................12

*In re Auto-Guadeloupe Investissement S.A.*,
  2012 U.S. Dist. LEXIS 147379 (S.D.N.Y. Oct. 10, 2012) .........................................................11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) .........................................................................................................12

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of
  Fortress Inv. Grp. LLC*,
  No. 14 CIV. 1801 NRB, 2014 WL 3404935 (S.D.N.Y. July 9, 2014) ........................................7

*Chevron Corp. v. Shefftz*,
  754 F. Supp. 2d 254 (D. Mass. 2010) ........................................................................................11

*Esses v. Hanania* (*In re Esses*),
  101 F.3d 873 (2d Cir. 1996) .........................................................................................................7

*In re Euromepa S.A.*,
  51 F.3d 1095 (2d Cir. 1995) ................................................................................................10, 11

*In re Godfrey*,
  526 F. Supp. 2d 417 (S.D.N.Y. 2007) .........................................................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ............................................................................................................ passim

*In re Kreke Immobilien KG*,
  No. 13 MISC. 110 NRB, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) .....................................8

*In re Mare Shipping Inc.*,
  2013 U.S. Dist. LEXIS 152337 (S.D.N.Y. 2013) .......................................................................9

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ...................................................................................................9, 12

*Newsat Limited (In Liquidation)(Receivers and Managers Appointed) & Anor v. Adrian Maxwell Ballantine & Anor*,
   File No. VID51/2017 ...................................................................................................3

*Norcast S.ar.l. v. Castle Harlan, Inc.*,
   No. 12 CIV. 4973 PAC, 2014 WL 43492 (S.D.N.Y. Jan. 6, 2014).........................................10

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*,
   No. 15 MISC. 0081 SHS, 2015 WL 3855113 (S.D.N.Y. June 22, 2015) ................................8

*United States v. Global Fishing, Inc.*,
   634 F.3d 557 (9th Cir. 2011) ........................................................................................6

**Statutes**

28 U.S.C. §1331..................................................................................................................3

28 U.S.C. §1782........................................................................................................ *passim*

28 U.S.C. § 1782(a) .................................................................................................2, 6, 7, 12

**Other Authorities**

Federal Rule of Civil Procedure 26(b)................................................................................12

Richard Randall Green (the "Applicant"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his application (the "Application") pursuant to 28 U.S.C. § 1782 ("Section 1782") for judicial assistance to conduct discovery of respondents Deutsche Bank Trust Company Americas ("Deutsche Bank Americas") and Citibank, National Association ("Citibank").

## I. PRELIMINARY STATEMENT

Applicant is a former non-executive director and Chairman of NewSat Limited (in liquidation) (receivers and managers appointed) ("NewSat") and Jabiru Satellite Limited (in liquidation) (receivers and managers appointed) ("Jabiru"). He is currently a defendant in a judicial proceeding entitled *Newsat Limited (In Liquidation)(Receivers and Managers Appointed) & Anor v. Adrian Maxwell Ballintine & Anor,* File No. VID51/2017, currently pending in the Federal Court of Australia (the "Australian Litigation"). The Australian Litigation was brought against him by the receivers and managers of NewSat and Jabiru (the "Plaintiff Companies"), who allege, among other things, that Applicant breached certain duties of care and diligence he had as a director ("fiduciary duties") when he "allowed" the Plaintiff Companies to enter into certain financing agreements with various secured lenders – now, secured creditors of the Plaintiff companies – for the purpose of funding the construction and launch of a commercial satellite.

In support of his defenses to the action filed against him in Australia, Applicant seeks narrowly-tailored document discovery from two of the Plaintiff Companies' secured creditors under the above-described financial agreements: Deutsche Bank Americas and Citibank. More particularly, Applicant seeks documents and communications from Deutsche Bank Americas and Citibank concerning (a) the considerations that these secured creditors undertook in agreeing to provide the Plaintiff Companies with financing under the financing agreements; and (b) these

1

secured creditors' ongoing considerations in agreeing to provide financing to the Plaintiff Companies, including the granting of waivers to NewSat and Jabiru under the financing agreements.  These documents are relevant as they may show that the secured creditors, after having performed their due diligence, were satisfied that NewSat and Jabiru were capable of completing the satellite project and repaying their debt, and therefore counter the allegations of the plaintiffs in the Australian Litigation that no reasonable director would have allowed the Plaintiff Companies to enter into the financing agreements.

Applicant's Section 1782 application satisfies the three statutory requirements.  First it is being brought in "the district in which [the] person resides or is found," (28 U.S.C. § 1782(a)), because (i) Deutsche Bank Americas has its headquarters in Manhattan, and (ii) Citibank carries on substantial, continuous, and systematic business in Manhattan.  Second, Applicant seeks the discovery for "use in a proceeding in a foreign . . . tribunal," (*id.*), namely the Federal Court of Australia, Victoria.  Third, Applicant, as a litigant in the Australian Litigation, qualifies as an "interested person."  *See id.*

Moreover, the factors identified by the U.S. Supreme Court to guide courts' discretion in analyzing applications under Section 1782 all favor granting Applicant's request.  Neither Deutsche Bank Americas nor Citibank is a participant in the foreign proceedings, and Section 1782 provides an effective mechanism for obtaining the targeted discovery set forth in Exhibits B and C to the Application.  In addition, the Australian Federal Court is receptive to the document discovery sought by Applicant, which (as was previously stated) will provide the Australian court with information that is both useful and highly relevant to Applicant's defense.  Applicant's request is not made to circumvent any limitation on discovery imposed by the Australian courts.  Finally, the discovery request is narrowly tailored and is not unduly intrusive

or burdensome.

Accordingly, Applicant respectfully requests that the Court grant this Application pursuant to Section 1782, permitting Applicant to serve the subpoenas attached as Exhibits B and C to the Application on Deutsche Bank Americas and Citibank respectively.

## II.     JURISDICTION AND VENUE

This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 in that this matter arises under Section 1782.  This Court has personal jurisdiction over respondent Deutsche Bank Americas, which maintains its corporate headquarters and principal place of business at 60 Wall Street, New York, NY.  Roman Decl., ¶ 10; and France Decl., ¶ 23.  The Court also has personal jurisdiction over respondent Citibank in that Citibank conducts significant, systematic and continuous business activity in this District, having over 70 branches and maintaining a number of corporate offices in Manhattan, including one at 388 Greenwich Street, New York, NY.  Roman Decl., ¶¶ 11-12; and France Decl., ¶ 23.

## III.     FACTUAL BACKGROUND

Applicant, a former non-executive director and Chairman of the Plaintiff Companies, is one of two defendants in the Australian Litigation.  France Decl.,[1] ¶¶ 1 and 4; and Roman Decl.,[2] ¶ 3 and Exh. A.  The Australian Litigation was brought by the receivers and managers of the Plaintiff Companies.  France Decl., ¶ 3.

In the Australian Litigation, the Plaintiff Companies allege that Applicant breached certain duties of care and diligence he had as a director ("fiduciary duties") when, during the

---

[1] "France Decl." and "France Declaration" refer to the Declaration of Bryan Michael France In Support of this Ex Parte Application for Judicial Assistance Pursuant To 28 U.S.C. §1782.  The France Declaration was filed concurrently with this Application.

[2] "Roman Decl." and "Roman Declaration" refer to the Declaration of Eric Roman In Support of this Ex Parte Application for Judicial Assistance Pursuant To 28 U.S.C. §1782.  The Roman Declaration was also filed concurrently with this Application.

period between January 2011 and July 2013, he and his co-defendant Mr. Ballintine purportedly caused or "allowed" the Plaintiff Companies to enter into five agreements by which the Plaintiff Companies obtained financing from certain secured lenders in order to pay for the construction and launch of a commercial satellite. *Id.*, ¶¶ 5-7. The five financing agreements at issue are: (i) the COFACE Facility Agreement; (ii) the Reserve Facility Agreement; (iii) the Export-Import Bank of the United States ("Ex-Im") Agreement; (iv) the Common Terms Agreement; and (v) the Security Trust Deed (collectively, the "Financing Agreements"). *Id.*, ¶ 8. All five of the Financing Agreements were executed by the Plaintiff Companies on July 4, 2013. *Id.*

The alleged breach, according to the plaintiffs, was that Applicant failed to give proper consideration to the viability of the satellite project and the ability of the Plaintiff Companies to execute on that project before causing or allowing the Plaintiff Companies to enter into the Financing Agreements. *Id.*, ¶¶ 10 and 12. That is to say, the plaintiffs allege that no reasonable director should have permitted the Plaintiff Companies to be bound by the terms of these Financing Agreements, which – given the financial condition or operational capabilities of the Plaintiff Companies at the time the Financing Agreements were being considered – were purportedly too onerous for the Plaintiff Companies to meet. The Plaintiff Companies' efforts to construct and launch the satellite eventually failed, and the Plaintiff Companies were placed into administration on April 17, 2015, and subsequently into liquidation, on August 7, 2015. *Id.*, ¶ 6.

The secured creditors under the Financing Agreements include, among others, Deutsche Bank Americas and Citibank. *See* France Decl., ¶ 7. As part of his defense, Applicant seeks to argue that the secured creditors performed due diligence prior to agreeing to enter into the Financing Agreements and provide funding to the Plaintiff Companies. *Id.*, ¶ 12. The information that the secured creditors received from the Plaintiff Companies in the course of

4

their due diligence efforts must have satisfied them that the Plaintiff Companies' satellite project was commercially viable, and that the Plaintiff Companies were capable of both implementing the project and repaying the debt they would be incurring under the Financing Agreements. *Id.* In addition, the secured creditors continued to provide financing throughout the course of the project, and even waived some of the requirements under the Financing Agreements in an effort to continue to do business with the Plaintiff Companies. *Id.*, ¶ 9. The basis for the secured creditors' decision to enter into the Financing Agreements with the Plaintiff Companies, as well as the factors they considered when continuing to finance the satellite project (including their consideration in making the decision to waive certain requirements set forth in the Financing Agreements), are all highly relevant to Applicant's defense, in that they tend to counter the plaintiffs' allegations that no reasonable director would have allowed the Plaintiff Companies to enter into the Financing Agreements. *Id.*, ¶¶ 10-12.

During the course of the Australian Litigation, Applicant requested production of documents concerning (a) the considerations the secured creditors undertook in agreeing to provide the Plaintiff Companies with financing under the Financing Agreements; and (b) the secured creditors' ongoing considerations in agreeing to provide financing to the Plaintiff Companies, including the granting of waivers to the Plaintiff Companies under the Financing Agreements. *Id.*, ¶¶ 13-15. Applicant made repeated efforts to obtain these documents from the plaintiffs, as described in detail in paragraphs 16 to 19 of the France Declaration. However, Applicant was informed by the plaintiffs that the secured creditors – including Deutsche Bank Americas and Citibank – refused to produce or otherwise provide access to such documents to Applicant. *Id.*, ¶ 20. As of the date of this declaration, plaintiffs have failed to produce documents concerning the Financing Agreements from any of the secured creditors, including

Deutsche Bank Americas and Citibank. *Id.*, ¶ 21.

On information and belief, these documents are in the possession of Deutsche Bank Americas and Citibank, both of which are located in the United States, and both of whom either reside or are otherwise within this District. *Id.*, ¶¶ 14 and 22-23. Without the judicial assistance of the U.S. Federal District Court, Applicant will be unable to obtain the above-referenced documents from Deutsche Bank Americas and Citibank, as these two companies are located in the United States and are outside the jurisdiction of the Australian courts. *Id.*, ¶ 24.

## IV. ARGUMENT

Congress fashioned Section 1782 to provide "broad assistance" to foreign tribunals. *United States v. Global Fishing, Inc.*, 634 F.3d 557, 563 (9th Cir. 2011). In order to obtain discovery under Section 1782, Applicant must first establish three basic statutory prerequisites. If these prerequisites are satisfied, the court shall consider several discretionary factors. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255-56 (2004).

Here, Applicant satisfies both the statutory prerequisites and the discretionary *Intel* prongs. The discovery Applicant requests is exactly the type of discovery that Congress contemplated when passing 28 U.S.C. § 1782. This Application therefore should be granted.

A.  **Applicant Satisfies Section 1782's Three Statutory Prerequisites**

Section 1782(a) provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the

6

> testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

Discovery pursuant to 28 U.S.C. § 1782 has three statutory prerequisites. The statute may be properly invoked where (1) the discovery is sought from persons residing or found in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) Applicant is a foreign or international tribunal or an "interested person." *See Esses v. Hanania* (*In re Esses*), 101 F.3d 873, 875 (2d Cir. 1996). Applicant satisfies all three requirements.

First, both Deutsche Bank Americas and Citibank either reside or are found in the Southern District of New York for the purposes of Section 1782. Deutsche Bank Americas maintains its corporate headquarters and principal place of business at 60 Wall Street, New York, NY. *See* Roman Decl., ¶ 10 and Exhibit H. On information and belief, the documents sought from Deutsche Bank Americas are either located or readily accessible this location. *See* France Decl., ¶ 23; and Roman Decl., ¶ 13 and Exh. K. Thus, Deutsche Bank Americas is "found" in this District for purposes of Section 1782. *See In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV. 1801 NRB, 2014 WL 3404955, at *4 (S.D.N.Y. July 9, 2014) (holding that when a corporation maintains its headquarters in New York, it is found within this district for purposes of Section 1782) (internal citations and quotations omitted).

Respondent Citibank, while headquartered in Sioux Falls, South Dakota, conducts

7

continuous, systematic, and significant business within this District. *See* Roman Decl., ¶ 10. Citibank has approximately 70 branches in New York County alone, and maintains corporate offices at several locations, including one at 388 Greenwich Street, New York, NY where, on information and belief, the documents sought are either located or readily accessible. *Id; see also* France Decl., ¶ 23; and Roman Decl., ¶ 12 and Exh. J.  The operation of these branches and corporate offices establishes the requisite "systematic and continuous local activities" that render Citibank "found in" the Southern District of New York. *See In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (in a Section 1782 application, a corporation is "found" in the district where it conducts "systematic and continuous" activities); *see also In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, No. 15 MISC. 0081 SHS, 2015 WL 3855113, at *2 (S.D.N.Y. June 22, 2015) (holding that respondent law firm is found in S.D.N.Y. based on "systematic and continuous" presence from New York office of a law firm that admittedly "operate[s] as a single law firm"); *In re Kreke Immobilien KG*, No. 13 MISC. 110 NRB, 2013 WL 5966916, at *3 (S.D.N.Y. Nov. 8, 2013) (German bank operating in New York with branch office that was not a separate legal entity was "found" in S.D.N.Y. for purposes of § 1782).

Second, there is no question that Applicant seeks discovery for use in a proceeding before a foreign tribunal as is required by Section 1782.  Applicant seeks documents to be used to aid his defense in the above-described Australian Litigation, to which he is a party-defendant. France Decl., ¶ 1, 13, and 22 to 26.  That litigation is currently pending before a foreign tribunal, specifically, the Federal Court of Australia at Victoria. *Id.*  This Application therefore satisfies the second requirement of Section 1782.

As to the third requirement, as a party to the Australian Litigation, Applicant is clearly an

"interested person" within the meaning of 28 U.S.C. § 1782. *See Intel Corp.,* 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the "interested person[s]" who may invoke § 1782 . . ."); *accord In re Mare Shipping Inc.*, 2013 U.S. Dist. LEXIS 152337, *9 (S.D.N.Y. 2013).

Thus, all three of Section 1782's requisite prongs are satisfied.

### B. The Supreme Court's *Intel* Factors Strongly Favor Granting Applicant's Section 1782 Application

Once the statutory requirements are met, "a district court may grant discovery under § 1782 in its discretion." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). In *Intel Corp.*, the U.S. Supreme Court identified four factors that "bear consideration" by district courts in exercising their discretion to grant a Section 1782 discovery application: (1) whether the person from whom discovery is sought is a party in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal to federal-court assistance; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country of the United States"; and (4) whether the request is unduly intrusive or burdensome. *Intel Corp.,* 542 U.S. at 264-65.

In this case, all four *Intel* factors weigh in favor of granting Section 1782 discovery.

#### 1. Neither Citibank Nor Deutsche Bank Americas Are Parties to the Underlying Australian Litigation

The first *Intel* factor inquires into whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel,* 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid").

In the present case, neither Citibank nor Deutsche Bank Americas are parties to the Australian Litigation, and both lie outside the jurisdictional reach of the Australian Federal

9

Court.  France Decl., ¶¶ 23-24.  The Australian Federal Court therefore has no power to compel Citibank or Deutsche Bank Americas to produce the sought-after documents, and neither Citibank nor Deutsche Bank Americas is willing to voluntarily produce the requested documents. *Id.*  In short, the documents that Applicant seeks from Deutsche Bank Americas and Citibank cannot be obtained for use in the Australian Litigation without Section 1782 assistance from this District Court.  *Id.*  For all these reasons, the first *Intel* factor is satisfied.

### 2. Applicant Seeks Highly Relevant Documents That Will Assist and Be Well Received by the Australian Federal Court

The second *Intel* factor counsels courts to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  In the absence, however, of "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," a district court should err on the side of permitting discovery. *In re Euromepa S.A.,* 51 F.3d 1095, 1100 (2d Cir. 1995).  Rather than deny a § 1782 request because it suspects that the evidence gathered would ultimately be rejected by the foreign tribunal, a U.S. district court should presumptively allow discovery to the extent that such a grant would promote the statute's goals of efficiency and comity. *See Euromepa,* 51 F.3d at 1100.

There is nothing to suggest that the Federal Court of Australia would reject the documents that are being sought after in this Section 1782 Application.  There are, in fact, cases on record of Section 1782 applications seeking document discovery for use in an Australian court proceedings being granted in this District, with no indication that the Australian courts would reject such discovery.  *See, e.g., Norcast S.ar.l. v. Castle Harlan, Inc.,* No. 12 CIV. 4973 PAC, 2014 WL 43492, at *1 (S.D.N.Y. Jan. 6, 2014) (noting that Applicant in that case had

10

previously filed a Section 1782 application seeking discovery to be used in an actual or proposed litigation in Australia and that the application was granted in part); *In re Application of Barnet*, No. 13 MISC. 214 RMB, 2014 WL 7409524, at *5 (S.D.N.Y. Dec. 30, 2014) (noting as part of the background of the dispute that the "Australian court ordered the Liquidators to submit evidence that had been disclosed in the 1782 proceeding by mid-March 2014").

In addition, Gilbert + Tobin Lawyers ("Gilbert + Tobin"), who are the solicitors representing Applicant in the Australia Litigation, have other experience with Section 1782 applications seeking documents for use in the Australian courts. France Decl., ¶ 26. Given the relevance of the sought-after documents to Applicant's defense (as explained in detail in the Factual Background section, *supra*), the Australian Federal Court has been advised that this Application is being made. *Id.* at ¶ 27.

### 3. This Application Does Not Conceal An Attempt to Circumvent Foreign Proof-Gathering Restrictions

This Application is not an attempt to "circumvent foreign proof-gathering restrictions" or other policies of Australia or the United States. Rather, it is a good faith effort to access probative and highly relevant evidence for use in the Australian Litigation.

Judges in this district and elsewhere have interpreted this *Intel* factor to turn on whether applicants are seeking discovery in bad faith. *See In re Auto-Guadeloupe Investissement S.A.*, 2012 U.S. Dist. LEXIS 147379, *23 (S.D.N.Y. Oct. 10, 2012) (applicant's characterization of foreign proceedings was misleading and inaccurate); *see also Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 262 (D. Mass. 2010). A Section 1782 applicant is not required to seek discovery of the materials sought from the foreign tribunal before filing a Section 1782 application. *See Euromepa*, 51 F.3d at 1098 (Section 1782 contains no "quasi-exhaustion requirement" that would force litigants to seek discovery from the foreign tribunal in advance of requesting such

discovery from the district court in a Section 1782 application). The information sought need not be discoverable or admissible in the foreign forum. *Intel*, 542 U.S. at 253 (holding that "§ 1782(a) does not impose . . . a [foreign-discoverability] requirement."); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012).

Where, as here, the foreign tribunal simply lacks jurisdiction to compel the respondent to provide evidence and applicants are not seeking to use Section 1782 for abusive purposes, the third *Intel* prong is satisfied.

### 4. The Discovery Sought Is Narrowly Tailored to the Needs of the Australian Litigation, and Is Neither Burdensome Nor Intrusive.

Like all federal discovery, the proper scope of discovery under Section 1782 is governed by Federal Rule of Civil Procedure 26(b). *Mees*, 793 F.3d at 302; *In re 28 U.S.C. § 1782*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008). Accordingly, district courts retain "broad authority...to fashion discovery orders issued pursuant to section 1782." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 102 13 (2d. Cir. 1992). Here, Applicant's discovery requests, drafts of which are attached hereto as Exhibit A (documents subpoena to Deutsche Bank Americas) and Exhibit B (documents subpoena to Citibank) are narrowly tailored both in time and scope to include only information likely to be relevant to the Australian Litigation.

As may be seen from Applicant's proposed subpoenas, the contemplated requests are limited to non-privileged documents and communications in Deutsche Bank Americas' or Citibank's possession, custody or control, that concern the Financing Agreements and financing provided to the Plaintiff Companies pursuant to the Financing Agreements. This limited universe of information sought from Deutsche Bank Americas and Citibank is neither unduly intrusive nor burdensome, is directly relevant to Applicant's defenses in the Australian Litigation, and falls well within the broad scope of discovery permitted under the Federal Rules.

Applicant satisfies this fourth and final *Intel* prong.

## V.     CONCLUSION

For the foregoing reasons, Applicant respectfully requests that the Court enter an Order granting leave to serve Deutsche Bank Americas and Citibank with the documents subpoenas attached to the Application as Exhibits B and C respectively.

Dated: February 26, 2018                                        Respectfully submitted,


                                          By:  s/ Eric Roman
                                          Eric Roman (ER-7928)
                                          ARENT FOX LLP
                                          1675 Broadway
                                          New York, NY  10019-5874
                                          212.484.3900
                                          *Attorneys for Applicant Richard Randall Green*